UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MARK HASSAN

                    Plaintiff,

                                        **DECISION AND ORDER**

                                          10-CV-06125

               v.

CITY OF ITHACA, NEW YORK, ET AL.

                    Defendant.
_____

## <u>INTRODUCTION</u>

Plaintiff, Mark Hassan ("Plaintiff"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, 42, U.S.C. § 1983 and the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"). (Docket No. 17-1.) Plaintiff alleges that the Defendants, the City of Ithaca (the "City"), the Ithaca Professional Fire Fighters Association (the "Union"), Brian H. Wilber, J. Thomas Dorman, Michael Schnurle, Roy Trask, Robert Covery and other unnamed individuals ("Individual Defendants") (collectively, "Defendants"), discriminated against him while he was employed as a fire fighter for the City.

The Defendants now move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

("Rule 12(b)(6)"). (Docket No. 7-8.)[1]  They contend, *inter alia*, that Plaintiff has failed to plausibly allege a claim to relief. Plaintiff opposes Defendants' motion, cross-moves for leave to amend the complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure ("Rule 15"), and has submitted a proposed amended complaint (Docket No. 17-1).  Defendants contend that permitting the amendment is futile, because the proposed amended complaint does not cure the deficiencies of the original complaint.  Rule 15(a)(2) states "[t]he Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Court, therefore, will consider the legal sufficiency of Plaintiff's proposed amended complaint to determine whether leave to amend is warranted.

## BACKGROUND

The follow facts are taken from the proposed amended complaint and are considered true for the purpose of this decision.[2] (Docket No. 17-1.)  Plaintiff is an individual of middle eastern descent. He was a fire fighter for the City for approximately 15 years prior

---

[1]The Union filed a separate motion to dismiss .  The Court will consider the motions contemporaneously.

[2]In connection with a motion to dismiss under Rule 12(b)(6), the Court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." <u>See</u> <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 100 (2d Cir.2005); <u>accord</u> <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 773 (2d Cir.1991).  Defendants urge the Court to consider several documents outside of the pleadings.  The Court declines this request. Consideration of these documents is more appropriate at the summary judgment stage. However, the Court will consider Plaintiff's complaint to the New York State Division of Human Rights (Def. Exhibit F, Docket No. 8), as it is referred to in the proposed amended complaint.

to his termination on April 27, 2011.  According to the Plaintiff, throughout his employment he attained satisfactory work reviews.

After September 11, 2001, Plaintiff began to hear co-workers and his superiors use the following terms in relation to individuals of middle eastern descent: "sand nigger," "dune coon" and "towel head." He states that employees of the fire department made such comments at least weekly and continuously throughout the remainder of his employment.

Plaintiff alleges that he has personally been called a "towel head" and a "dune coon" both in and out of his presence.  Defendant Trask "regularly" called him a "dune coon," and one of his co-workers, Peter Snell (not a named defendant), "frequently" made comments such as: "your people don't know shit" and "why don't you go back to where you came from."  Defendant Colvert nicknamed Plaintiff "Hassan Chop," after a middle eastern cartoon character. Colvert told Plaintiff that Hassan Chop "would have the shit beat out of him."  Also, in February 2010, Plaintiff's supervisor, Defendant Schnurle, an Assistant Fire Chief, called Plaintiff a "fuckin' towel head[]" after watching a news program regarding a conflict in the middle east.  Plaintiff alleges that this conduct was tolerated by officials at the fire department.

Plaintiff also claims that he was treated differently with respect to disciplinary actions. On March 9, 2009, Plaintiff received a two-month suspension, a restricted shift assignment and

was ineligible to serve as an Acting Lieutenant.  Defendant, Brian H. Wilber, former Chief of the Ithaca Fire Department, issued these penalties, which Plaintiff states were the result of conduct that occurred more than a year prior.  Plaintiff has not plead the specific facts which prompted the punishment, but he states that "the penalties imposed...were...disproportionate in comparison with the penalties imposed upon Plaintiff's co-workers for more severe misdeeds and misconduct, including several threats and acts of violence."  Compl. at ¶16.

Plaintiff also alleges that on April 16, 2009, Defendant Wilber and other unknown individuals ordered Plaintiff to undergo an "Article 72 psychological exam."  He claims that this is "a tactic employed by the City of Ithaca against disfavored employees." He also alleges that "upon information and belief, Defendants Schnurle, Trask, Covert and/or John and Jane Doe(s) communicated false and manufactured accusations against Plaintiff prompting said disciplinary action."

Plaintiff alleges that Defendant Schnurle complained to Defendant Dorman shortly after he called Plaintiff a "fuckin' towel head," in February or March 2010.  Then, in May 2010, Plaintiff was issued a "Notice of Discipline seeking his termination" by Defendant Dorman.  Plaintiff believes that this was prompted by false complaints or accusations made by Defendants Schnurle, Trask, Covert and other unknown individuals.

Pursuant to the May 2010 notice, "Plaintiff was prohibited 'from entering any City of Ithaca building, facility, property, or worksite.'" Plaintiff alleges that this type of restriction was not placed on other fire fighters who were disciplined. He alleges that all of the disciplinary actions were "approved by municipal officials with final authority over disciplinary matters in the Ithaca Fire Department."

On December 17, 2010, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("DHR"). Plaintiff was issued a right to sue letter on April 4, 2011. Thereafter, Plaintiff's pay was suspended and he was terminated on April 27, 2011. Plaintiff alleges that his pay suspension and termination were retaliation for his DHR Complaint.

An arbitration proceeding was initiated at some point prior to Plaintiff's termination. It is not clear whether this was before or after Plaintiff filed his charge of discrimination with the DHR. Plaintiff does not allege what was the exact nature of the proceeding, but it appears that the arbitration related only to disciplinary actions against the Plaintiff. He does not allege whether any allegations of discrimination were raised in the arbitration proceeding, or that the arbitrator or the union were aware of his allegations of discrimination.

Plaintiff alleges that the Union "breached their [sic] duty of fair representation in allowing Defendant City of Ithaca to

retaliate against Plaintiff by agreeing to withdraw [its] grievance of the disciplinary charge(s) against Plaintiff, allowing the immediate termination of Plaintiff's employment without challenge or a hearing." Plaintiff also alleges that the Union President, George Apgar, directed that members refrain from contacting the Plaintiff, and that this directive was "unprecedented."

Based on these allegations, Plaintiff raises seven enumerated causes of action for ethnic and/or national origin discrimination and retaliation under Title VII, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and the NYSHRL against the City and the Individual Defendants in their individual and official capacities. He also raises a claim for First Amendment retaliation under 42 U.S.C. § 1983 against the City and the Individual Defendants. Finally, he alleges two causes of action against the Union, for aider and abettor liability under the NYSHRL and for breach of the duty of fair representation.

## DISCUSSION

A complaint generally need only contain a "short and plain statement of the claim showing that the Plaintiff is entitled to relief" to satisfy federal notice pleading requirements. See Fed.R.Civ.P. 8(a); Gregory v. Daly, 243 F.3d 687, 692 (2d Cir. 2001). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." See Scheuer v. Rhodes, 416 U.S. 232, 236

(1974) *overruled on other grounds by* <u>Davis v. Scherer</u>, 468 U.S. 183 (1984).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. <u>See</u> <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir.2007); <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir.2006). The plaintiff must satisfy "a flexible 'plausibility standard.'" <u>See</u> <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157 (2d Cir. 2007). The Court does not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). However, the court may disregard a plaintiff's "legal conclusions, deductions or opinions couched as factual allegations." <u>See</u>, <u>e.g.</u>, <u>In re NYSE Specialists Sec. Litig.</u>, 503 F.3d 89, 95 (2d Cir.2007) (citation omitted).

## A. Statute of Limitations

Defendants argue that many of Plaintiff's Title VII allegations are time-barred by the applicable statute of limitations, which requires that claims of discrimination be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1). Here, Plaintiff filed his claim with the EEOC on December 17, 2010. Accordingly, Defendants argue that Plaintiff

cannot proceed with a claim based on any discriminatory act occurring before February 20, 2010. Plaintiff argues that his claims are not time-barred based on the continuing violation doctrine. The statute of limitations is an affirmative defense, and dismissal at the complaint stage is "appropriate only if a complaint clearly shows the claim is out of time." See Harris v. City of New York, 186 F.3d 243 (2d Cir. 1999). Defendants have not sufficiently shown that Plaintiff's Title VII claims are time-barred. However, this issue may be raised again following discovery.

**B.   Discrimination[3]**

Plaintiff raises claims of discrimination in the form of discriminatory discipline and termination and a hostile work environment. A prima facie case of discrimination requires that Plaintiff prove the following: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002). While a plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss (Id. at 515), he must

---

[3]Plaintiff's claims of discrimination and retaliation arising under Title VII, the NYSHRL, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 are generally analyzed according to the same standards of liability. Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597 (2d Cir. 2006)(NYSHRL and Title VII); Back v. Hastings On Hudson Union Free School Dist.. 365 F.3d 107 (2d Cir. 2004)(§ 1983); Choudhury v. Polytechnic Institute of New York, 735 F2d 38 (2d Cir. 1984) (§ 1981). Accordingly, the Court will consider these claims together.

at least plead enough facts to state a claim for discrimination that is plausible on its face. See Patane v. Clark, 508 F.3d 106, 112-113 (2d Cir. 2007); see also Hedges v. Town of Madison, 2012 WL 101199 (2d Cir. 2012) (noting that the precise pleading standard for employment discrimination cases in this circuit is "somewhat of an open question.").

To state a claim for a hostile work environment a plaintiff must plead facts in support of the following elements: the conduct complained of "(1)... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [ethnicity]." Patane, 508 F.3d at 113 (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir.2001)).

Plaintiff alleges that he is an individual of middle eastern descent and that he received adequate work reviews while he was employed by the City.  Throughout the final ten years of his employment, his co-workers, who include an individual who he states had supervisory authority over him, subjected him to ethnic slurs and derogatory comments.  He was called names such as "towel head" and "dune coon" and he states that such derogatory statements were uttered at least on a weekly basis, even if not in his presence, and that city officials tolerated such conduct. He claims that some of the same individuals falsely accused him of certain work

infractions, which prompted disciplinary action. Plaintiff claims that the discipline he received was disproportionate to that received by other fire fighters for conduct that was more severe. Plaintiff later filed a charge of discrimination and was thereafter terminated from his position.

Taken as true and viewing all of the factual allegations in the light most favorable to the Plaintiff, this Court finds that he has plausibly alleged claims of employment discrimination and a hostile work environment.

The Court notes that many of the Defendants' arguments with respect to these claims are more appropriate at the summary judgment stage. For example, Defendants argue, *inter alia*, that Plaintiff has not performed satisfactorily, that the comments were not temporally related to any employment action, that the discriminatory comments or actions were not the actions of persons with supervisory authority, that certain defendants are entitled to qualified immunity, and that plaintiff has not established the requisite policy or custom to hold the City liable under § 1983. At this stage, the Court finds that Plaintiff's allegations are sufficient to plausibly allege his claims of discrimination. These contentions may, however, be raised again following discovery on these issues. Therefore, the Defendants' motion is denied with respect to Plaintiff's claims of discrimination.

## C.   Retaliation

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) [he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action." Patane, 508 F.3d at 114 (citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir.2004).   Here, Plaintiff filed a charge of discrimination on December 17, 2010 and he was terminated on or around April 27, 2011.   With respect to the element of causation, at this stage in the litigation, the Court finds that a four month[4] span of time is sufficiently plausible to suggest a causal connection. See e.g. Espinal v. Goord, 558 F3d 119, 129 (2d Cir. 2009)(noting that the outer limits of a temporal relationship have not been precisely defined, but that a six month span of time was sufficiently close, considering other factors indicative of causation).   The Court need not determine at this stage whether this period of time, absent other evidence, sufficiently supports a claim for discriminatory retaliation.   It is enough that Plaintiff has plausibly alleged his claim. Accordingly, Defendants' motion is denied with respect to this claim.

---

[4]The Court notes that, contrary to Plaintiff's belief, the protected activity alleged is the filing of the discrimination complaint on December 17, 2010, not the issuance of the right to sue letter by the DHR on April 4, 2011.

**D.   42 U.S.C. § 1983 - First Amendment Retaliation**

To state a claim for retaliation under the First Amendment, Plaintiff must allege that he suffered retaliation after speaking on a matter of public concern. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record.  The heart of the matter is whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose. Id. at 188 (citing Lewis v. Cowen, 165 F.3d 154, 163-4 (2d Cir.1999); Connick v. Myers, 461 U.S. 138, 147-48 and n. 7 (1983)) (internal quotations and citations omitted); see also Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143-4 (2d Cir. 1993).  Even in the discrimination context, where the employee's speech is intended to remedy the effects of discrimination against him personally, rather than discrimination which is "pervasive or systemic," such speech is not considered a matter of public concern. See Saulpaugh, 4 F.3d at 143.

Here, the Court construes Plaintiff's proposed amended complaint as alleging a claim for First Amendment retaliation based on his termination following his DHR complaint, as it is not alleged that he complained of discrimination prior to that time. Plaintiff does not allege in the proposed amended complaint, nor

does the DHR complaint contain any allegations of system-wide discrimination. Rather, Plaintiff complained of discrimination related to disciplinary actions taken against him personally. Even viewing Plaintiff's allegations as true and in the light most favorable to him, as the Court must, the proposed amended complaint does not allege facts that would suggest that a larger, system-wide policy of discrimination against people of middle eastern descent existed, or that Plaintiff intended to speak out against any such system-wide discrimination.

While plaintiff alleges that certain of his co-workers have made stray derogatory remarks regarding individuals of middle eastern descent since September 11, 2001, he has not alleged any instances of discrimination against anyone other than himself. He has not alleged that there were other individuals of middle eastern descent employed by the fire department during this time period, that such individuals felt that these stray comments were discriminatory or created a hostile work environment, or that these remarks were even heard by individuals of middle eastern descent other than himself (assuming they were even heard by the Plaintiff). Cf. Cotarelo v. Village of Sleepy Hollow Police Dept., 460 F.3d 247 (2d Cir. 2006)(finding that complaints regarding discrimination against Spanish speaking police officers *in general* was a matter of public concern); Konits v. Valley Stream Cent. High School Dist., 394 F.3d 121 (2d Cir. 2005)(complaints about

discrimination against a co-worker was a matter of public concern); see also Danzer v. Norden Systems, Inc., 151 F3d 50 (2d Cir. 1998)("[S]tray remarks alone do not support a discrimination suit.").

Accordingly, the Court finds that Plaintiff has not plausibly alleged a claim for First Amendment retaliation and Count Eight of the proposed amended complaint is hereby dismissed.

**E.   Claims Against the Union**

Plaintiff's proposed amended complaint is limited to one paragraph relating to the Union in which he alleges that the Union "breached their duty of fair representation ... by agreeing to withdraw the Union's grievance of the disciplinary charge(s) against Plaintiff, allowing the immediate termination of Plaintiff's employment without challenge or a hearing. As such, Defendant Union acted in concert [ ] with the other named Defendants in their discriminatory and retaliatory conduct."  He also alleges that he "was treated disparately by the Defendant Union...[when] the President of the Union, George Apgar directed all members not to have contact with Plaintiff. Such prohibition was, upon information and belief, unprecedented." (Docket No. 17-1, at ¶21.)

Based on these factual allegations, Plaintiff brings the following two claims against the Union: (1) a claim that the Union unlawfully aided and abetted the City in discriminating against

him, violating Section 296(6) of the NYSHRL, and (2) a claim that the Union breached its duty to fairly represent him in an arbitration proceeding.   Plaintiff's conclusory, unsupported allegations, however, fail to plausibly state a claim for aider and abettor liability under the NYSHRL or a violation of the duty of fair representation. Accordingly, Counts Nine and Ten of the proposed amended complaint are hereby dismissed with prejudice, and the Union is dismissed as a Defendant to this lawsuit.

    1. <u>Aider and Abettor Liability under the NYSHRL</u>

    Section 296(6) of the NYSHRL states: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article." N.Y. Exec. Law § 296(6).   To state a claim for aider and abettor liability under the NYSHRL, courts have required a "showing that the defendant *actually participated* in the conduct giving rise to the claim of discrimination." <u>E.g.</u> <u>Robles v. Goddard Riverside Comm. Ctr.</u>, 2009 WL 1704627 at *8 (S.D.N.Y. June 17, 2009) (citing cases).   The aider and abettor must also "share the intent or purpose of the principal actor" and the plaintiff must show the "direct [and] purposeful [] participation" of the aider and abettor to establish liability under § 296(6). <u>Id.</u>

    Here, Plaintiff alleges that the Union withdrew its grievance of Plaintiff's disciplinary charges (presumably in the arbitration proceeding) and that the Union president, George Apgar, directed

members not to contact Plaintiff.  Plaintiff has not alleged that he informed the Union (by filing a grievance or otherwise) of his discrimination complaints and he also does not allege that the issue of discrimination in the workplace was raised in the arbitration proceeding or at any time during the processing of the Union's grievance of Plaintiff's disciplinary charges.  While Plaintiff makes the conclusory allegation that the Union acted "in concert" with the other Defendants, he has not alleged facts which would support his claim that the Union participated in the discriminatory conduct and that it acted with the shared intent to discriminate against him.  There are simply no factual allegations made by the Plaintiff that would connect the Union to the alleged discriminatory conduct of the City or the Individual Defendants.

Further, Plaintiff's allegation that he "was treated disparately" by the Union when its president directed members not to have contact with the Plaintiff, because this prohibition was "unprecedented," does not support Plaintiff's claim that the Union actually participated in the alleged discrimination.  Plaintiff does not allege any facts that would suggest that this action was discriminatory, except for claiming that he believes that it was "unprecedented." This allegation alone, however, does not automatically create the inference that the Union's actions were discriminatory.

Accordingly, because Plaintiff has failed to plausibly allege that the Union's actions were discriminatory in nature such that they shared the discriminatory intent of the City and the Individual Defendants, his claim under N.Y. Executive Law §296(6) is hereby dismissed.

2. <u>Duty of Fair Representation</u>

"To prove that a union has breached its duty of fair representation ... [plaintiff]... must establish ... that the union's actions or inactions 'are either 'arbitrary, discriminatory, or in bad faith.'" <u>Vaughn v. Air Line Pilots Ass'n, Intern.</u>, 604 F.3d 703, 709 (2d Cir. 2010)(quoting <u>Air Line Pilots Ass'n v. O'Neill</u>, 499 U.S. 65, 74 (1991)). "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. Moreover, tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach. A union's acts are discriminatory when substantial evidence indicates that it engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives." <u>Id.</u> at 709 (internal citations and quotations omitted).

Here, Plaintiff has not provided any non-conclusory, factual allegations that the Union's withdrawal of the grievance of his

disciplinary charges was arbitrary, discriminatory or in bad faith. The factual circumstances surrounding the grievance of Plaintiff's disciplinary charges and the ensuing arbitration are wholly absent from the complaint. And, as discussed above, Plaintiff has not alleged any factual connection between the Union's actions and those of the City and the Individual Defendants that would lead to an inference of discrimination. Accordingly, the Court finds that Plaintiff has not plausibly alleged that the Union's conduct was arbitrary, discriminatory or in bad faith, and his claim for breach of the duty of fair representation is hereby dismissed.

### CONCLUSION

For the reasons discussed herein, the City of Ithaca and the Individual Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiff's First Amendment retaliation claim (Count Eight) is dismissed. Plaintiff's Motion to Amend the complaint to replace it with the proposed amended complaint is granted with respect to his claims against these Defendants.

Further, the Union's Motion to Dismiss is granted, and Plaintiff's claims against the Union (Counts Nine and Ten) are dismissed with prejudice. The Clerk of the Court is also directed to dismiss the Ithaca Professional Fire Fighters Association as a party to this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                              s/ Michael A. Telesca
                                            MICHAEL A. TELESCA
                                         United States District Judge

Dated:     Rochester, New York
           April 9, 2012